STATE OF CONNECTICUT        :    **Under Seal**

: 

:    ss: New Haven, Connecticut

:

COUNTY OF NEW HAVEN      :    July 22, 2019

**FILED**

2019 JUL 22 P 2: 36

U.S. DISTRICT COURT
NEW HAVEN, CT.

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND SEARCH WARRANT

I, Amy Noto, being duly sworn, depose and state as follows:

### BACKGROUND OF AFFIANT

1.      I am Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since July of 2002. My experience as an FBI Special Agent has included the investigation of international and domestic terrorism matters and violent crimes. Since October of 2016, I have been assigned to investigate Violent Crimes Against Children and have participated in several investigations involving child exploitation, trafficking of child pornography, and online enticement of minors. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, and various other criminal law procedures. I am a federal law enforcement officer who is engaged in enforcing federal criminal laws, and I am authorized by the Attorney General to request search and arrest warrants.

2.      I am currently investigating an adult male named Jeffrey L. Bacon (the "TARGET"), who was born in 1959 and whose full date of birth ("TARGET'S DOB") is known to me, for offenses involving child pornography and the sexual exploitation of minors. At the time of the offense conduct set forth below, the TARGET was living at an address known to me (the "TARGET'S ADDRESS") in Connecticut.

3.      On or about May 29, 2019, the Hon. Robert M. Spector, United States Magistrate Judge, issued a search warrant, in Case No. 3:19-mj-852 (RMS), authorizing law enforcement to

seize and search the TARGET's Samsung cell phone for evidence related to this investigation. The facts set forth below are substantially similar to the facts set forth in the affidavit in support of the application for the prior warrant, with additional information about evidence found on the SUBJECT COMPUTER, as defined below.

4.      I now make this affidavit in support of a criminal complaint and arrest warrant charging the TARGET with the following criminal offenses: soliciting and attempting to solicit a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(3)(B) and (b); possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); enticing and attempting to entice of a minor, in violation of 18 U.S.C. 2422(b); and transferring obscene material to a minor, in violation of 18 U.S.C. § 1470 (collectively, the "TARGET OFFENSES"). Based on the information set forth in this affidavit, I believe there is probable cause to believe and I do believe that the TARGET committed the TARGET OFFENSES in the District of Connecticut.

5.      I also make this affidavit in support of another application for a search warrant to search the following item, which is also listed in Attachment A, and the contents contained therein: one Toshiba Laptop computer that is currently being held at the Enfield Police Department under case number 2018-33076 (the "SUBJECT COMPUTER"). The application seeks a warrant to search the SUBJECT COMPUTER, and the contents therein, and seize evidence, fruits, and instrumentalities of the crime of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), as more specifically described in Attachment B, which is incorporated herein by reference. Based on the information set forth in this affidavit, I believe there is probable cause to believe that the SUBJECT COMPUTER constitutes and contains items that constitute

instrumentalities, fruits, and evidence of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), as more fully described in Attachment B.

6.     The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement; publicly available court records; my own investigation to include interviews of witnesses, personal observations, documents and other investigative materials which I have reviewed, as well my training and experience as a law enforcement officer.  Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause for the requested criminal complaint and search warrant.

## RELEVANT STATUTES

7.     18 U.S.C. § 2252A(a)(3) prohibits a person from knowingly soliciting, through the mails or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is or contains a visual depiction of an actual minor engaging in sexually explicit conduct. 18 U.S.C. § 2252A(b) prohibits a person from attempting to do the same.

8.     18 U.S.C. § 2252A(a)(5)(b) prohibits a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was

3

produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

9.      18 U.S.C. § 2422(b) prohibit a person from using a means or facility of interstate or foreign commerce to knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense.  The statute also prohibits a person from attempting to do the same.  I am aware that Connecticut law, C.G.S. § 53a-71(a)(1), which is sexual assault in the second degree, prohibits an actor from engaging in sexual intercourse with another person where "such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person." Under 18 U.S.C. § 2427, the term "sexual activity for which any person can be charged with a criminal offense" also includes the production of child pornography, as defined in 18 U.S.C. § 2256(8).

10.      18 U.S.C. § 1470 prohibits a person from using the mail or any facility or means of interstate or foreign commerce to knowingly transfer obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years. The statute also prohibits a person from attempting to do the same.

## DEFINITIONS

11.      The following definitions apply to this Affidavit:

a.      "Minor," as used herein, is defined by 18 U.S.C. § 2256(1) to mean any person under the age of eighteen years.

b.      "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or

4

other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), and also includes any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2256(8).

        c.     "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.  18 U.S.C. § 2256(5).

        d.     "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2)(A).[1]

### THE INVESTIGATION AND PROBABLE CAUSE

        12.     On or about October 22, 20018, the Enfield Police Department ("EPD") received a complaint that a 15-year-old female ("Minor Victim" or "MV") in Enfield had received inappropriate messages from a 50-year-old male.  EPD Officer Steven Prior met and spoke with MV and her mother that same day.

---

[1] 18 U.S.C. § 2256(2)(A)(v) was amended on December 7, 2018 to include lascivious exhibition of the "anus" to the definition of "sexually explicit conduct."

13.     Officer Prior first spoke with MV's mother.  In both verbal and written statements, MV's mother stated the following. On or about October 20, 2018, MV informed her that a male who was in his 50s was contacting MV on the phone messenger application Kik.  MV showed her mother two facial pictures of a white male with grey hair and glasses. MV showed her mother a third picture of the same male who was naked and showed his penis and testicles with a banana inserted into his rectum. MV also informed her mother of the content of the conversations that she was having with the male, which she said was sexual in nature.  The mother allowed MV to keep contacting the male, under her supervision, so they could gather information as to who he was. Once she learned of the male's identity, she called the police.

14.     Officer Prior then spoke to MV.  In both verbal and written statements, MV stated the following:

a.      MV was part of a messenger group called "Connecticut Teens" on the Kik messenger application on her cell phone. She said the group is supposed to be restricted to 13-year-old to 19-year-old people from Connecticut.  MV was contacted by a person named Jeff Smith with a Kik username of "itisus1" ("SUSPECT USERNAME").  The person asked MV her age, sex and location. MV told SUSPECT USERNAME she was female and 15 years old.[2] The conversation was raunchy and lewd from the beginning and got progressively worse as the conversation progressed.  MV's Kik username at the time was "Disturbedbby" ("MV-USERNAME-1").  During the conversation with SUSPECT USERNAME, he identified himself as Jeffrey Smith and sent her a picture of his face and upper torso after telling her that he was 48 years old. During the conversation with SUSPECT USERNAME, he asked MV what her "kinks"

---

[2] MV's written statement that she provided to the EPD does not indicate she told SUSPECT USERNAME she was 15 years old.  However, in a subsequent affidavit in support of a state arrest warrant, EPD detectives stated that in MV's *verbal* and written statements, MV indicated she told SUSPECT USERNAME she was 15 years old.

were and if she had ever "dommed"[3] someone. MV stated that SUSPECT USERNAME then sent her an unsolicited picture which showed the same male naked showing his genitalia and having a banana inserted into his rectum.  MV took a screen shot of the picture because she did not want to lose it so she could show her mother.

        b.     MV then logged out of her MV-USERNAME-1 account and created a new Kik account with a username of "CTteen003" ("MV-USERNAME-2").  Using MV-USERNAME-2, MV contacted SUSPECT USERNAME.  At no point did MV indicate she was the same person as MV-USERNAME-1.  MV told SUSPECT USERNAME that her parents were arguing and that she needed to get out of the house. SUSPECT USERNAME responded that he could comfort her and hold her. MV told SUSPECT USERNAME that she was only 14 years old, and he replied that they could "make out" and do more if she wanted to.

        c.     MV continued to contact SUSPECT USERNAME to try to get information as to who he was. SUSPECT USERNAME eventually sent her a picture of a utility bill with parts of the name and address blacked out, but she zoomed in on the picture and could see through the blackout. The bill was addressed to the TARGET and listed an address in Connecticut.[4]

        d.     During MV's conversations with SUSPECT USERNAME through both of her accounts, SUSPECT USERNAME tried to get MV to meet him at a mall and he said that he would buy her clothes, lingerie, and sexual toys.  SUSPECT USERNAME also requested her to try the clothes and lingerie on and model them for him.  SUSPECT USERNAME also asked her about her cup size (breast size), if she was a virgin, if she shaved her pubic area, and if she would

---

[3] Based on my training and experience, I believe that "dommed" is short for "dominated."

[4] The address listed on the utility bill is the same address that I know the TARGET actually resided at the time of the offense conduct described in this affidavit.

7

perform oral sex on him.

      e.     While MV was messaging SUSPECT USERNAME, MV asked him if he was okay with going to jail for seeing minors naked because he was old. He responded that he was only 48. At one point, SUSPECT USERNAME sent a picture of a Connecticut license which was partially blocked and showed a date of birth for the year 1959.

      f.     SUSPECT USERNAME also sent MV a picture of another female with her mid drift showing. When MV asked SUSPECT USERNAME, who was in the picture, he responded that it was his friend who he has "done this with before." During the conversations, SUSPECT USERNAME told MV he wanted to "finger her", "eat her" and "jerk off" while she masturbates if she would let him.[5]

      g.     MV believes SUSPECT USERNAME had been contacting other young people on the "Connecticut Teens" message board. She knows of another person who said that he had talked to SUSPECT USERNAME but that she did not want to disclose this individual's information.

      h.     MV indicated she had been talking to SUSPECT USERNAME for a while, but most recently the conversations started about a week prior, on or around October 15, 2018.

      15.     On or about October 29, 2018, EPD Detectives Brian Callaghan and Timothy Lewis met with MV. MV showed them some screen shots she had saved on her phone of her conversations with SUSPECT USERNAME while MV was using MV-USERNAME-1. MV indicated that once she signed out of that account to create MV-USERNAME-2, all off the messages in the MV-USERNAME-1 account were lost. The screenshots she saved did not show

---

[5] Based on my training and experience, I am aware that "finger" refers to masturbation of the vagina with a finger; "eat" refers to performing oral sex on a female; and "jerk off" refers to masturbation of a male.

the entire conversation, but it did show an image of a Connecticut Driver's License with the TARGET'S DOB, an image of the TARGET, and an image of a male's penis and an object in his rectum. The screen shots also included parts of the conversation where SUSPECT USERNAME wrote "Love to finger u and eat u" and "jerk off while u masturbate."

16.     MV and her mother then gave Detective Lewis permission to take over the MV-USERNAME-1 account on Kik.

17.     On October 30, 2018, Det. Lewis, acting in an undercover capacity, assumed the MV-USERNAME-1 account on Kik.  SUSPECT USERNAME had last contacted the MV-USERNAME-1 account on October 24, 2018.  Det. Lewis replied to SUSPECT USERNAME with "sorry just got my phone back." The following are parts of the three-day conversation that ensued.

a.     SUSPECT USERNAME immediately wrote "Remind me your age." Det. Lewis replied back "15." SUSPECT USERNAME asked "Want me to come get you out of school, go shopping." SUSPECT USERNAME chatted with Det. Lewis at the MV-USERNAME-1 account for the next several hours. SUSPECT USERNAME asked to see a picture and then wrote "Want to see what I look like."  SUSPECT USERNAME then sent an image of an older male that appeared to be that of the TARGET (based on the image of the TARGET from his Department of Motor Vehicles Driver's license photograph). During the conversation. SUSPECT USERNAME wrote that he wanted to go to the mall and have the victim try things on. SUSPECT USERNAME asked "u are a virgin right" and then followed up with "while u change can I rub my cock will not touch u" and "u ever see a guy jerk off." Det. Lewis responded that "still not sure what to expect at the motel." SUSPECT USERNAME then wrote that we could have "oral." Based on training and experience I am aware that SUSPECT USERNAME was referring to oral sex.  SUSPECT USERNAME wrote "send me pic maybe I'll jerk off to it."  At that time Det. Lewis sent SUSPECT

USERNAME a picture of a clothed female's body without the face showing. There was no reply and Det. Lewis's shift ended. Another EPD Detective, Detective Bailey, then monitored the account.

      b.    While Detective Bailey was monitoring the account, SUSPECT USERNAME then wrote "I have to ask for my protection u are not a cop or working for any law enforcement. Det. Bailey responded "No, not a cop are you." SUSPECT USERNAME replied "No way baby had to ask u are under age. " SUSPECT USERNAME then sent a picture of a male's pubic area and then two pictures of a penis.

      c.    On October 31, 2018, SUSPECT USERNAME contacted the MV-USERNAME-1 account and made comments such as "I want to see u" and indicated he could pick up the victim at 12:30 from school.

      d.    On November 1, 2018, SUSPECT USERNAME contacted the MV-USERNAME-1 account. Among other things, he wrote "u take top off", "rub ur tits" and "pinch ur nipples." SUSPECT USERNAME continued "Show me your chest."  Det. Lewis, using the MV-USERNAME-1 account, wrote "U first," and a picture of a penis was sent by SUSPECT USERNAME. SUSPECT USERNAME then wrote "Send me pic of tits and pussy I send video".

    18.    On or about November 1, 2018, EPD obtained a state search warrant for the TARGET's residence in Connecticut for any mobile and tablet devices.  The same day, Detectives Callaghan and Lewis, and other EPD members went to the resident to execute the warrant.  Upon arrival at the TARGET's residence, Det. Lewis encountered the TARGET's wife who indicated the TARGET was not at home and was at work.  She provided his place of work, and two law enforcement officers went to his place of work.  While executing the warrant, Det. Lewis received a Kik message at the MV-USERNAME-1 account from SUSPECT USERNAME.  The message

contained a video of a male masturbating in what appeared to be a commercial bathroom.

19.     Detective Lewis and Callaghan then responded to the TARGET's place of work. Detective Lewis went inside the bathroom and observed the same tile floor that was in the video that SUSPECT USERNAME had sent, which is described in the preceding paragraph.

20.     Detectives Lewis and Callaghan then met with the TARGET and explained the investigation. The TARGET initially denied having any conversation with underage persons. The TARGET admitted to using Kik, but stated that he would only converse with people over 18 years old. Detective Lewis then showed the TARGET the screen shots and associated pictures obtained from the MV-USERNAME-1 account.   The TARGET then admitted that he did have a conversation and sent the pictures in question to a person he believed was 15 years old. In both verbal and signed written statements, the TARGET stated, among other things, the following:

        a.      he utilizes the Kik application on his phone and the SUSPECT USERNAME.

        b.      the TARGET met a person on Kik about a month ago in a room for 11 to 50 year olds named "11-50." The TARGET asked the person her age and she replied "15 yeas old".

        c.      the TARGET and the person had a conversation about meeting up and going to the mall to buy things.

        d.      the TARGET sent the person a picture of his face and upper torso and also sent her a picture of the birth date on his driver's license. The TARGET eventually sent the person a picture of his penis and rectum.

        e.      the TARGET stated that he had asked the person if she was affiliated with law enforcement and she responded no. Det, Lewis showed the TARGET the image that was

obtained by MV, and the TARGET confirmed that it was the same image he had sent.

        f.      Det. Lewis also showed the TARGET the image of himself and that of the birth date from a driver's license obtained by MV. The TARGET confirmed that he had sent the images.

        g.      The TARGET stated that approximately two to three days ago he was contacted by the same person. The person told the TARGET that she wanted to go to the mall and wanted "more." The TARGET admitted that he sent an image of his penis and then a short time prior to speaking with Det. Lewis and Det. Callaghan, he sent a video of him standing in the bathroom at his place of work and rubbing his penis. The TARGET stated that he knew the person was 15 years old and that it was wrong. The TARGET stated that he wanted to meet the 15 year old initially, but only to buy her clothes.

        21.      Det. Lewis then asked the TARGET where his phone was. The TARGET initially stated that it was at his home and he does not bring it to work. The TARGET was informed that he had admitted to sending a video a short time earlier from his phone. The TARGET then stated that his phone was at his work station at his place of work. Other law enforcement officers then located the phone and brought it to where the TARGET was being interviewed. The TARGET identified the phone as being his and as the one that he used to converse on Kik and send images. The TARGET stated that he had received the phone a little over a month ago.

        22.      Det. Lewis seized the phone based on the belief that it contained evidence of the crime and that returning it could result in the destruction or loss of evidence. The phone is a Samsung Galaxy 7 mobile phone, model G930A, IMEI # 359470074147069

        23.      Det. Lewis asked the TARGET if he had any other computers or cell phones at his home.  The TARGET stated that the only other electronic device he had at the house was a

computer and that he was willing to turn it over to the police.  The TARGET stated that he did not know where the computer was as his wife had taken it and hid it from him about 4 months ago. The TARGET stated his wife told him he was on the computer too much.  The TARGET stated that he never used the computer to chat with persons nor did he use it to search for images of underage persons.

24.     Det. Lewis and Det. Callaghan then responded back to the TARGET's residence and met with his wife. The wife contacted the TARGET at work, spoke with him and then voluntarily turned over the SUBJECT COMPUTER. The wife stated that the SUBEJCT COMPUTER she was turning over was in fact the same one she had taken away from the TARGET.  The wife made no comments as to why she had taken the computer away from her husband or why she had hid it.

25.     On November 5, 2018, Det. Lewis applied for and obtained a Connecticut Superior Court search and seizure warrant to seize and examine the Target's Samsung phone, which was seized during his interview.  The examination revealed the Kik application on the phone, but the cell phone extraction software was not capable of extracting the contents of the Kik application. As such, the information contained within the application was reviewed by turning on the phone and video recording the review. The examination of the Kik application found that among the conversations was the undercover conversation that began on October 30, 2018 between SUSPECT USERNAME and MV-USERNAME-1. The examination also found that the SUSPECT USERNAME had chat conversation with another individual on Kik during which SUSPECT USERNAME states that he is "working on a 15 yr old." SUSPECT USERNAME then later posts a similar picture as the same one that Det. Lewis had sent to him of the clothed female without a face showing. SUSPECT USERNAME wrote "Gonna meet her when I get back from

vacation"; "yup take her virginity"; "yup 15". The examination also showed that some of the chat rooms/contacts for the account were "CT Teen Chat" "11-50" "Connecticut Teens" and "Teens Sharing nuwdes".

26.     The examination of the phone also revealed the following images that appeared to be similar as to those sent to the MV-USERNAME-1 account either during the operation of the account by MV or by EPD members acting in an undercover capacity:

        a.      An image of a Connecticut DMV license blocked out with the exception of the date of birth, which is the TARGET'S DOB.

        b.      Images of a penis.

        c.      An image of a utility bill with the last name and street address blacked out.

        d.      An image of male's face and upper torso that appears to be of the TARGET.

        e.      A video was that appeared to be the same video as that sent to the MV-USERNAME-1 account of a male masturbating in what appears to be a commercial bathroom.

27.     During the examination of the phone, law enforcement also found an image that appears to be, based on my training and experience, that of a 10-12 year old female naked on a bathroom counter exposing her vaginal area.

28.     On or about November 19, 2018, the TARGET was arrested by EPD and charged in Connecticut Superior Court with enticing a minor by computer, in violation of Connecticut General Statute ("C.G.S.") § 53a-90a(b)(1), and risk of injury to a minor, in violation of C.G.S. § 53-21(a)(1). The TARGET was released on bond, and those charges are still pending.

29.     Det. Lewis later received a call from another member of the TARGET's family. The family member indicated she had gone to the TARGET's residence on November 1, 2018 after the police had left.  The family member indicated that the she spoke with the TARGET's

wife.  The family member indicated that the wife told her that the TARGET had told the wife to turn over the laptop to the police.  While the family member had no specific information on why her the wife had taken the laptop away from the TARGET, the family member did state that over the past few years, the wife has taken away several computers from the TARGET and either hid them or broke them.  The family member stated that the wife told her she did that because the TARGET was in "inappropriate chat rooms" and that he was sending pictures out on the computer. The family member did not know exactly what the wife meant by "inappropriate chat rooms" and never asked.

30.    On January 22, 2019, Det. Lewis applied for and obtained a Connecticut Superior Court search and seizure warrant to seize and examine the SUBJECT COMPUTER for evidence of the Connecticut state crime of possession of child pornography in the third degree, in violation of C.G.S. § 53a-196f.

31.    The examination revealed nine unique images of what the forensic examiner believed were child pornography. I have reviewed the nine images, and based on my training and experience, they appear to depict prepubescent females engaged in sexual explicit conduct. Specifically, six of the images depict six prepubescent females being vaginally penetrated by an adult male's penis.  Another image depicts a prepubescent female performing oral on an adult male.  Another image depicts an adult female performing oral sex on a prepubescent female. The last image depicts what I believe is a naked prepubescent female who is bent over exposing her anal and vaginal area.

32.    The nine images were center to the National Center for Missing and Exploited Children ("NCMEC") in order to determine if any of the minors depicted in the images are known victims.  I am aware that NCMEC has a Child Victim Identification Program ("CVIP"). As part

of CVIP, NCMEC maintains a database of images and videos depicting known victims of child pornography who have been identified in prior law enforcement investigations. In a report received on June 5, 2019, CVIP responded that three of the images found on the SUBJECT COMPUTER depict three known victims who have been identified by foreign law enforcement.  These three victims were under the age of 18 when the images were originally created.

33.     As discussed above, on or about May 29, 2019, I applied for and obtained a federal search warrant from the Hon. Robert M. Spector to seize and conduct a further forensic examination of the TARGET's Samsung phone for additional evidence of the TARGET OFFENSES. That examination is still ongoing.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that digital files or remnants of such files can be recovered months or even years after they have been downloaded or copied onto a computer, deleted, or simply viewed via the Internet.  Electronic files downloaded or copied onto a computer can be stored for years at little to no cost.  Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools. When a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the device until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

35.     In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.  The browser typically

16

maintains a fixed amount of space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a device depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and habits. As noted, it is not at all uncommon to recover files deleted months or years before.

36.   Wholly apart from user-generated files, computer contain electronic evidence of how a device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

37.   Information stored within a computer may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether a device was remotely accessed, thus inculpating or exculpating the device owner. Further, computers contain evidence indicating how and when the device was accessed or used.

For example, computers typically contain information that logs: user account session times and durations, activity associated with user accounts, other electronic devices that connected with or were attached to the computer, and the IP addresses through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic devices. The geographic and timeline information described herein may either inculpate or exculpate the device user. Last, information stored within a computer may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (*e.g.*, internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the device or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

38.     A person with appropriate familiarity with how a computers work can, after examining this forensic evidence in its proper context, draw conclusions about how the computers were used, the purpose of their use, who used them, and when.

39.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on computer tshat are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic

evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

40.    Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on the computer. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

41.    I know that when an individual uses a computer to access or save child pornography, the device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The device is also likely to be a storage medium for evidence of crime.

42.    In addition, I am aware that computer users can attempt to conceal data within the device through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of

time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

43.     The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying the file directories and any individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); conducting a file by file review of the data; examining all the structured, unstructured, deleted, and free space data on a particular piece of media; opening or reading the first few pages of each file in order to determine their precise contents; scanning storage areas to discover and possibly recover deleted data; scanning storage areas for deliberately hidden files; and performing electronic key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

44.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying the SUBJECT COMPUTER or the contents therein.  Consistent with Rule 41(e)(2)(B), it is also requested that the warrant be deemed executed once the SUBJECT COMPUTER has been physically seized, and that review of the contents of the SUBJECT COMPUTER is permitted at a later time. The later review may require techniques, including but not limited to computer-assisted scans of the entire device, that might expose many parts of a contents to human inspection in order to determine whether it is evidence described by the warrant.

45.     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

46.     Based on the aforementioned factual information, I believe there is probable cause that from on or about October 15, 2018 through on or about November 1, 2018, the exact dates being unknown, in the District of Connecticut, the TARGET committed the TARGET OFFENSES.  Therefore, I respectfully request that a criminal complaint and arrest warrant be issued to support the arrest of and to charge the TARGET with the TARGET OFFENSES.

47.     In addition, based on the aforementioned factual information, I believe there is probable cause to believe that the SUBJECT COMPUTER constitutes and contains items that constitute contraband, fruits, instrumentalities and evidence of the possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B).  Accordingly, in consideration of the foregoing, I respectfully request that this Court issue an order authorizing the search and seizure of the SUBJECT COMPUTER, as described in Attachment A,  and the contents contained therein, for the items, materials and records more specifically identified in Attachment B.

Special Agent Amy Noto
Federal Bureau of Investigation

Subscribed and sworn to before me this 22nd day of July, 2019

/s/ Robert M. Spector

HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

21

## ATTACHMENT A

### Property to Be Searched

The property to be searched is a Toshiba Laptop computer currently being held at the Enfield

Police Department under case number 2018-33076 (referred to herein and in Attachment B as the

"SUBJECT COMPUTER").

## ATTACHMENT B

### Particular Things to be Seized

All devices, records, and information, in any format, that constitute fruits, evidence and instrumentalities of the crime of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (the "TARGET OFFENSE"), for the time period from October 15, 2018 to November 1, 2018 (unless otherwise indicated), including, but not limited, to the following items:

1.  The SUBJECT COMPUTER;

2.  All photographs, images, and videos, in any format, including any associated metadata or EXIF information, depicting child pornography, as defined in 18 U.S.C. § 2256;

3.  All records or information, including records and information from prior to October 15, 2018, indicating how, when, and/or from where any child pornography currently residing on the SUBJECT COMPUTER was obtained.  Such records and information includes the following:

    a.  Records of Internet activity related, including logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, and records of internet protocol addresses used;

    b.  Communications pertaining to the child pornography;

    c.  Names, addresses, contact information or lists of names, addresses or contact information, in any format, of those who may have been contacted in connection with the child pornography;

    d.  Evidence indicating whether and/or when the child pornography was accessed and/or viewed by any user of the SUBJECT COMPUTER.

    e.  Evidence of who used, accessed, owned, or controlled the SUBJECT COMPUTER;

    f.  Evidence of software that would allow others to control the SUBJECT COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    g.  Evidence of the lack of such malicious software;

    h.  Evidence indicating how and when the SUBJECT COMPUTER was accessed or used, and evidence indicating the geographic location of the SUBJECT COMPUTER when it was accessed or used;

     i.  Evidence indicating the state of mind of the SUBJECT COMPUTER's user as it relates to the child pornography;

     j.  Evidence of the attachment to the SUBJECT COMPUTER of other electronic devices or similar containers for electronic evidence;

4.     Evidence of counter-forensic programs; and

5.     Passwords and encryption keys, and other access information that may be necessary to access the SUBJECT COMPUTER.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Pursuant to Rule 41(e)(2)(B), it is authorized that electronically stored information may be imaged or copied. Consistent with Rule 41(e)(2)(B), the warrant is deemed executed once the SUBJECT COMPUTER has been physically seized, and that review of the contents of the SUBJECT COMPUTER is permitted at a later time.