UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

vs.  CRIMINAL NO. 3:20-CR-237(VLB)

JEFFREY BACON  February 11, 2021

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Jeffrey Bacon concedes that his conduct in this matter was completely unacceptable and that a period of incarceration is warranted. He is remorseful and deeply embarrassed. However, he will receive a substantial period of incarceration— 60 months—merely by operation of law. That period is "sufficient but not greater than necessary" to accomplish the purposes of sentencing. See 18 U.S.C. § 3553a. Mr. Bacon, himself a survivor sexual abuse, is now in his sixties and will almost assuredly be on supervision through at least his seventies if not his life. He has sought and participated in sex offender treatment on his own and transcended many of the issues that led him to commit this offense. In light of his age, life experiences, and efforts at rehabilitation, a non-guidelines sentence of 60 months satisfies the purposes of sentencing.

Mr. Bacon entered a plea of guilty to distribution of child pornography. His guidelines range is 108 months to 135 months but he is subject to a mandatory minimum of 60 months. Child pornography offenses are challenging for all involved in the court system. The subject is abhorrent. The victims are helpless children. There is always the concern that a defendant has either harmed a child or will harm one in the future. It is a natural human reaction to view a defendant in such a case as a

pervert, distinguishable from other perverts only by the number and nature of images he has amassed. Just as with any other criminal offense, however, it is necessary to do more to arrive at a fair, just and reasonable sentence. The sentencing statute, 18 U.S.C. §3553(a), requires the sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. It requires the Court to consider the need for just punishment—i.e., a sentence "sufficient but not greater than necessary" to achieve the goals of a criminal sentence. Those goals can be accomplished with the proposed sentence.  Mr. Bacon uses Part I of this memorandum to address his life circumstances as they are relevant to this offense and sentencing. Part II addresses the constellation of factors relevant to specific deterrence and rehabilitation unique to this case. Part III addresses the guidelines as well as the sentences imposed in comparable cases. Part IV concludes this memorandum.

## I. MR. BACON'S MODEST UPBRINGING WAS MARRED BY A SIGNIFICANT INSTANCE OF ABUSE.

In most ways, Mr. Bacon had a childhood that was not nearly as difficult as many who come before this court. Nonetheless, it had several remarkable challenges. Mr. Bacon was one of five siblings. ¶58. His father was a career postal worked but maintained a second job in order to make ends meet. ¶54. Clearly, the family did not live hand-to-mouth but it did not enjoy much in the way of privilege.

### A. A working class childhood marked by abuse.

Mr. Bacon enjoyed a positive relationship with father: his mother, however, was a different story. It is not clear, nor does Mr. Bacon know, whether he his mother was

2

ever diagnosed with any mental health issues. However, he described her as "selfish, needy, and problematic." ¶56. As noted in the *PSR* she once tried to stab herself in front of Mr. Bacon, leaving him to intervene and call the police. This caretaking function of child to parent, rather than parent to child, appeared to be a trend in his life: Mr. Bacon worked as a teenager to provide financial support to his mother. ¶55. Clearly, his relationship with one of the adults in his young life was marked by unusual characteristics.

The most obviously problematic aspect of Mr. Bacon's relationship with his mother is that she pursued and consummated sexual contact with him over a period of four months. *PSR*, ¶57. This abuse occurred at the age of 13 and continued for approximately four months. The abuse ceased after 13 year-old Jeff's protestations and it appears that, while it stopped, he never received any type of services to process these events. Moreover, he obviously continued to live with his mother and the family went about its business. Even in Jeff's adult life, there is no evidence that he addressed the significance of these events—other than that it may, perhaps explain his heavy drinking in his 20s and early 30s. *See PSR*, ¶69. Jeff is a fairly taciturn man and it seems he learned and maintained those ways early on.

Research suggests that there is a correlation between those who have been sexually victimized and the perpetration of sexual offenses. For example, a 2001 study examined whether there was a connection between suffering and perpetrating sexual abuse on the grounds that this theory was popularly repeated but may be

3

apocryphal.[1] In fact the study did find such a link, concluding: "The data supports the notion of a victim-to-victimiser cycle in a minority of male perpetrators but not among the female victims studied. Sexual abuse by a female in childhood may be a risk factor for a cycle of abuse in males." [2]  While the data from this study is highly nuanced and certainly does not suggest that *all* victims become perpetrators, one of the nuances is highly relevant to this case.

> This analysis of data deriving from a male cohort attending a forensic psychotherapy clinic for antisocial and sexually deviant subjects gives rise to some comments and conclusions. It would seem that there are at least two subgroups of adult perpetrators of child sexual abuse—a smaller one which had previous (self-reported) childhood victim experiences (n=79) and a large one which did not (n=146)—it is only for the smaller group that the notion of a cycle of sexual abuse can be considered. In this high-risk cohort, derived from a forensic pyschotherapy out-patient population, the risk of a being a perpetrator is enhanced by prior victim experiences, doubled for incest, more so for paedophilia, and even higher for those exposed to both paedophilia [sic] and incest. This suggests that, in this selected sample, the experience of being a victim of paedophilia may have a more powerful causative influence in giving rise to the subject becoming a perpetrator than does incest, and the joint experience of being exposed to both paedophilia and incest has the most powerful effect.

*Id*. at 488. Clearly, Mr. Bacon was a victim of incest and, at the age of 13, plausibly a victim of pedophilia. Significantly, other studies have come to similar conclusions, burnishing the connection between victimization and perpetration. Notably, a 2007 study on this topic in female study groups concluded: "This study replicates previous research on all male samples suggesting that the nature of the sexual abuse suffered

---

[1] M. Glasser, *et al*., "*Cycle of child sexual abuse: links between being a victim and becoming a perpetrator,*" Brit.J.Psychiatry, 179, 482-494 (2001).
[2] *Id*. at 482

4

in childhood is an important variable in predicting future sexual abuse perpetration."[3] Not only did this experience place Mr. Bacon in a cohort more likely to act out at some point in his life but the particular characteristics of that experience placed him in one of most affected risk groups. This, to some extent, explains his conduct.

### B. He nonetheless managed and remained employed as an adult.

In spite of this experience, Mr. Bacon has been commendably productive for most of his life. While there is a notable exception involving a workplace injury and the fallout around that, *infra,* Mr. Bacon has been consistently employed. He has been employed at countless factory jobs, construction firms, grocery stores, and even worked as a real estate agent. ¶¶78-86. Jeff has been, and remains, married to his wife Cindy for 37 years and the couple has two daughters together. The family regularly attended the Immanuel Lutheran Church in Bristol and Mr. Bacon taught bible study classes there when his daughters were children, two decades ago. ¶73. While the events related to his arrest have caused an understandable rift between Jeff and his youngest daughter, ¶ 61, he has been a family man who provided for and had a close relationship with his spouse and children.

### C. Challenges in middle age and old coping skills.

Mr. Bacon suffered a workplace injury and required surgery on fractured wrist in 2009. ¶¶ 66, 84-5. He was making $14.20 per hour in the job at which he injured

---

[3] K. Christpher, *et al*, "*Female sexual-offenders: Personality pathology as a mediator of the relationship between childhood sexual abuse history and sexual abuse perpetration against others,*" Child Abuse & Neglect 31 871-883, 871 (2007).

5

himself. Working with his hands for most of his life, this injury drastically limited his ability to perform duties to the employment to which he was accustomed. He collected workman's compensation from approximately 2012 to 2014. ¶ 85. In 2014, he returned to work but was making only $9.75 per hour and in 2016 went to a job that paid $10.25 per hour. ¶¶ 84-83. Mrs. Bacon stated that this was only part time work. *Exhibit A*, Letter of Cindy Bacon.

Mr. Bacon and his wife felt the effects of these setbacks financially and emotionally. They had always lived a working class lifestyle and had little in the way of savings or a cushion. As their financial challenges accumulated, they turned into emotional and relationship challenges that strained the marriage. ¶61. The Bacon's fought and blamed one another for their shared strife and barely spoke. Even once Jeff resumed fulltime employment again in 2017, ¶82, the marital problems this period caused still lingered. *Exhibit* A. Cindy describes Jeff as depressed and refusing to seek help at this time. *Id*.

Jeff turned to online pornography as a coping mechanism and to seek escape from his marital and financial difficulties. It began as simply viewing adult content but in the course of doing so he found and viewed material that included minors. Cindy was aware of his conduct insofar as it included adult pornography, because she discovered evidence from time to time, that Jeff was viewing adult pornography and entering similarly themed chat rooms. ¶25, 27. She stated:

> He started with porn then as I found out chatting in chatrooms. It bothered me but he would not stop. As far as I ever saw or knew it was adults. Till his arrest that I found out [it included minors]. It hurt me and still does.

6

*Exhibit* A. His issues with sexual content generally were, at that time, clear between the two of them. However, as she noted, she was not aware that Jeff was engaged in more than the viewing adult pornography but that it embraced minors—in terms of viewing and chats—as well. All told, Mr. Bacon came to possession a total of 19 images of child pornography between his laptop and phone and engage in the, admittedly reprehensible, conversations that led law enforcement to him. ¶¶ 5-32.

### D. This is no longer Mr. Bacon's life.

Jeff finally did get help. He began taking anti-depressants as prescribed by his primary care physician. ¶71. More importantly, he began seeking counseling from William Hobson. Importantly, Mr. Hobson is affiliated with the Connecticut Association for the Treatment of Sex Offenders and runs a therapy practice for people who struggle with problem sexual behavior. *See "Members,"* available at *https://www.catso.org/members-and-resources*. Mr. Bacon underwent 6 months of individual counseling attending 1 to 2 sessions per week and then transitioned to group therapy in July of 2019 shortly before his federal arrest (July 26). He continues to attend group sessions. As noted in the *PSR*, a recent weekly progress note reflects Jeff "received 'positive feedback from other members about progress he has made in treatment during the past year." ¶ 72. Perhaps more importantly, Cindy has also noticed the changes that have resulted from Jeff's counseling: "We have talked a lot [and] he went to cociling [sic] and meds for depression. Jeff is doing very good his old self and is remorseful and takes full responsibility." *Exhibit* A. Clearly, Mr. Bacon has taken steps to resolve the underlying issues that led to this offense as well as begun to repair the damage he cause to his family in committing this offense.

Jeff has known a working class lifestyle since his youth. He has, for the most part, carried on throughout. As a boy, he cleared suffered abuse that was both incalculably harmful and incalculably stigmatizes. He lived with that experiences and moved on. Later in life, when challenges struck, he sought solace in a way that was not only counterproductive but illegal and damaging to others. He accepts responsibility and is remorseful for that. He has taken steps to remedy those issues and the damage they have caused to his relationships and being accepted by into a family that still love and values him.

II. **A SENTENCE OF 60 MONTHS WILL SPECIFICALLY DETER AND REHABILITATE MR. BACON.**

Mr. Bacon will be 62 this June. Counsel will seek to have his surrender date delayed until he receives the Covid-19 vaccine so it is difficult to predict precisely when his sentence will commence. However, assuming a sentence of 60 months, he will likely be no younger than 66 years old upon his release assuming he receives all of his good time credit. In the event of a low guidelines sentence of 108 month sentence, he would be approximately 68 or 69 at the time of release. Given the mandatory period of supervised release of 5 years, any scenario will surely bring Mr. Bacon into his 70s still on supervision. Both his age and the continuity of custody and supervision provide assurances of rehabilitation and specific deterrence. He addresses each in this section.

First, these facts form a compelling case for specific deterrence. Assuming, *arguendo*, that Mr. Bacon were to have any remaining issues with problem sexual behavior, the consequences of a violation would be especially high for him. Already

a grandfather of four, Mr. Bacon has stated that he his wife hope to "mov[e] down south, where he can enjoy a slower pace of life with his wife and go fishing." While the consequences of a second sex offense are customarily serious, it is only more so for someone at Mr. Bacon's age: approaching his twilight years, further legal entanglements could completely deprive him of the yeas he and his wife look forward to. He has a disproportionate stake leading a law abiding life.

Second, the math of this case continues the already charted, and trod, path to rehabilitation. As noted in the *PSR* and this memorandum, Mr. Bacon has been attending sex offender treatment for nearly two years now—and is doing well. *See PSR.* ¶¶ 3-4, 72. As the *PSR* further notes, numerous Bureau of Prisons facilities have inpatient and outpatient, depending upon risk level, sex offender treatment programs. Mr. Bacon would like to continue to avail himself of these programs. Following a sentence of 60 months with good time credit, this would result in approximately 6.5 consecutive years of sex offender treatment upon release. But it does not stop there. The conditions contemplated in ¶¶ 115-18 are almost certainly going to be imposed—to which the defense has no objection—as conditions of supervised release. Mr. Bacon will continue to participate in treatment, polygraphs, and sex offender registration throughout supervised release. This will result in more than a decade of continuous treatment for a man who has already made significant strides at rehabilitation and had no issues during the pretrial period. Any potential issues will be resolved or flagged under this regime.

Mr. Bacon's age and years of continuous sex offender treatment operate to both specifically deter and rehabilitate him.

9

### III. THE GUIDELINES CALCULATION IS CORRRECT BUT NOT THE END OF THE ANALYSIS.

Mr. Bacon does not dispute the guidelines range stated in the plea agreement and the *PSR*. His total offense level is 31, his criminal history category is I, and his sentencing range is 108 to 135 months. However, the court is not bound by this range, only a mandatory minimum of 60 months, and the ultimate sentence is determined by application of the 18 U.S.C. § 3553a factors. Perhaps most importantly, a non-guidelines sentence of 60 months is not out of line with sentences imposed in similar cases in this district. Mr. Bacon addresses each point in this section of this memorandum.

First, it is well established that the parsimony clause of 18 U.S.C. § 3553a requires a sentence be "sufficient but not greater than necessary" to accomplish the purposes of sentencing. In determining the appropriate sentence in a given case, the Court must consider the range of penalties suggested by the Sentencing Guidelines. *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). However, since *United States v. Booker*, 543 U.S. 220 (2005), the Court is no longer bound by the Guidelines range. As the Second Circuit instructs, it is "emphatically clear that the Guidelines are guidelines—that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). Moreover, "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009); *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (emphasizing that the only "presumption of reasonableness" that applies to a

Guidelines sentence is "an appellate court presumption," not applicable in the initial sentencing analysis conducted by the District Court).

Thus, "[e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant." *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010). Rather, the Guidelines remain "only one of the factors to consider when imposing sentence." *Gall v. United States*, 552 U.S. 38, 59 (2007). The ultimate sentence must represent the "informed and individualized judgment" of the Court, Cavera, 550 F.3d at 189, based on the "unique facts" of each case. *Gall*, 552 U.S. at 54. As a result, the Court is free to disagree with the Guidelines and may impose a sentence outside the range. In fact, the Court may craft a sentence that varies significantly from that contemplated by the Guidelines, so long as such a "major departure" is "supported by a more significant justification." *United States v. Fareed Mumuni,* No. 18-1604-cr, 2019 WL 7196814, at *10 (2d. Cir. Dec. 27, 2019) (citing *Gall*, 552 U.S. at 50).

Second, this is precisely the type of case warrants the independent examination the Second Circuit called for in *United States v. Dorvee*, 616 F.3d 174, 184-188 (2d Cir., 2010). In *Dorvee*, the circuit noted that the child pornography guidelines are "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what §3553a requires." *Id*. at 184. The reason is that the rest of the sentencing guidelines are based upon empirical data about studied sentencing outcomes whereas the child pornography guidelines are based upon Congressional mandates for ever increasing

11

numbers. *Id.* at 185-86. Accordingly, most exacting of *Booker* type analysis is required given the realities of the applicable guidelines.

Third, a downward variance of to 60 months is consistent with similar non-guidelines sentences given in other cases in this district. For example, In *United States v. Richard Doyle*, 3:13-cr-227(MPS) this court varied downward to 60 months from a sentencing range of 210 to 240 months and an offense level of 37 (600 images) in the case of a 64 year-old man who worked as a teacher for 35 years. In reviewing the docket in the pleadings in that case, it appears that defendant was a gay man who long struggled with his sexuality and social stigma attaching to it. Similarly, in *United States v. Parilla*, 3:12-cr-140(VLB) this court sentenced a 49 year-old physician to 60 months, similarly varying downward—by 140 months—from a sentencing range of 210 to 240 months and an offense level of 37. Review of the docket in that proceeding suggests sexual abuse that defendant suffered as a child, in Boy Scouts, may have been a basis for the variance. In *United States v. Pearce*, 3:12-cr-59(SRU), Judge Underhill imposed a sentence of 60 months varying downward from guidelines range of 70 to 87 months based upon possession of 10 to 149 images. *See* Doc. No. 14 (plea agreement). Similarly, variances based on *Dorvee* have not be limited exclusively to child pornography cases. *See United States v. McCoy*, 2020 U.S.Dist.LEXIS 193993 (D.Ct., 2020)(recalling non-guidelines sentence was imposed in enticement case based upon *Dorvee* rationale). The variance Mr. Bacon seeks is by no means unheard of in this district.

Mr. Bacon concedes that one fact that may seemingly distinguish his case from the seemingly quantity driven likes of *Doyle* and *Parilla* are the chats he had with the

12

minor victim and the undercover officer. *C.f.* U.S.S.G. § 2G2.2. Probation's description of those transcripts as "raunchy and lewd from the beginning and [getting] progressively worse" is accurate. However, the guidelines already account for this fact insofar as they apply §2G2.1(a) which, as the *PSR* notes "produces a higher offense level" of 32. It then adds an additional 2 points on account of the minor victim being 15. Be this as it may, courts of this district, *McCoy*, supra, have still varied downward based upon *Dorvee's* reasoning. More to the point: in spite of this application of a higher offenses level, Mr. Bacon still has a total offense level 6 points lower than the defendants in *Doyle* and *Parilla*. Accordingly, the 4 year variance he seeks satisfies reasonable analysis just as easily as the 12.5 year variances granted in those cases.

The case presents the significant justification required for a downward variance. First, the law of the circuit almost invites a non-guidelines sentence in a child pornography cases. Second, Mr. Bacon, like other similarly situated defendants has a history of childhood sexual abuse that studies show place him a higher risk of perpetrating an offense—thereby diminishing his culpability. Third, this offense occurred contemporaneous with a period of significant personal strife. Finally, his significant efforts at addressing and taking responsibility for his actions and progress towards rehabilitation are both commendable and provide the court assurances he will not recidivate in the future.

### IV.   CONCLUSION.

A sentence of 60 months is warranted pursuant to the 18 U.S.C. §3553a factors. Five years in prison is undoubtedly a serious sentence that conveys the seriousness of the offense. That offense, while very serious is also tempered by the fact that Mr. Bacon himself is a survivor of a particularly delicate form of childhood sexual abuse and only committed this offense while going through period of personal strife. Moreover, he takes full responsibility for his actions and their consequences. At an age when most people hope to commence their retirements, he will be serving a prison sentence: this and his commendable efforts toward rehabilitation can assure the court he will remain law abiding. Accordingly, Mr. Bacon respectfully requests the court impose a sentence of 60 months followed by an appropriate period of supervised release.

Respectfully Submitted,

/s/Daniel M. Erwin/s/
By Daniel M. Erwin (ct28947)
FEDERAL DEFENDER'S OFFICE
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
Tel: (860) 493-6260
Fax: (860) 493-6269
Email: Daniel_Erwin@fd.org

### CERTIFICATION OF SERVICE

This is to certify that on February 1, 2021, a copy of the forgoing was filed electronically via the Court's CM/ECF system, and by that system, counsel for the Government has been provided with a copy of the forgoing.

/s/Daniel M. Erwin/s/
Daniel M. Erwin

14